UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JACOB R., | ) | No. CV 18-9146-PLA |
| Plaintiff, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Jacob R.[1] ("plaintiff") filed this action on October 24, 2018, seeking review of the Commissioner's[2] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on November 14, 2018, and December 3, 2018.

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on July 29, 2019, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born in 1981. [Administrative Record ("AR") at 255.] He has past relevant work experience as an office manager, as a football coach, and as a professional football player. [Id. at 27, 34, 128-29.]

On January 30, 2015, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since July 1, 2012. [Id. at 21; see id. at 255.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 206-07.] A hearing was held on July 6, 2017, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [Id. at 105-33.] A vocational expert ("VE") also testified. [Id. at 127-31.] On August 17, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability from July 1, 2012, the alleged onset date, through August 17, 2017, the date of the decision. [Id. at 21-34.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [Id. at 40-43.] When the Appeals Council denied plaintiff's request for review on August 29, 2018 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 1, 2012, the alleged onset date.[3] [AR at 23.] At step two, the ALJ concluded that plaintiff has the severe impairments of osteoarthritis; status post total right hip arthroplasty; and a history of

---

[3] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. [AR at 23.]

4

multiple knee and shoulder surgeries. [Id.] The ALJ also found that plaintiff's medically determinable impairment of depressive disorder and his diagnosed unspecified neurocognitive disorder,[4] do not cause more than minimal limitation in his ability to perform basic mental work activities and, therefore, are non-severe. [Id. at 24-25.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 26.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[5] to perform light work as defined in 20 C.F.R. § 404.1567,[6] as follows:

> [He is] limited to frequent climbing of ramps or stairs, balancing, and stooping. [He] is limited to occasional crouching and crawling. [He] is precluded from climbing ladders, ropes, and scaffolds. [He] is limited to occasional reaching overhead bilaterally and occasional pushing and pulling with the right lower extremity.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as an office manager as actually and generally performed. [Id. at 34, 128-29.] Accordingly, the ALJ determined that plaintiff was not disabled at

---

[4] Although the ALJ appears to have considered plaintiff's diagnoses of depressive disorder and neurocognitive disorder together as "mental health," he only explicitly stated that plaintiff's "medically determinable impairment of depressive disorder . . . is . . . non-severe." [AR art 25.] He never explicitly stated that plaintiff's diagnosis of unspecified neurocognitive disorder was a medically determinable impairment that was non-severe. [See generally AR at 24-25.] The ALJ shall clarify on remand whether plaintiff's diagnosis of unspecified neurocognitive disorder is a medically determinable impairment and whether it is severe.

[5] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

any time from the alleged onset date of July 1, 2012, through August 17, 2017, the date of the decision. [Id. at 60.]

V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he failed to: (1) properly assess the presence of a severe mental impairment and/or to consider mental health limitations in determining plaintiff's ability to perform his past relevant skilled work; (2) properly consider the evidence of physical limitations; and (3) properly consider plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.    STEP TWO LEGAL STANDARD**

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508 (effective through March 26, 2017), 404.1509, 404.1520(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment"). This must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508 (effective through March 26, 2017). The Commissioner's regulations define "symptoms" as a claimant's own description of his physical or mental impairment. 20 C.F.R. § 404.1528 (effective through March 26, 2017). "Signs," by contrast, "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements . . . [,] [and] must be shown by medically acceptable clinical diagnostic techniques." Id. Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." Id. A claimant's

statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish that there is a physical or mental impairment." Id.

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "de minimis" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); see also 20 C.F.R. § 404.1521(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ." 20 C.F.R. § 404.1521(b). It also includes mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. See Soc. Security Ruling ("SSR")[7] 85-28.

When reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687 (citing Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

/

---

[7] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

## B. ANALYSIS

In addition to physical impairments, the ALJ noted that plaintiff contends he suffers from a depressive disorder and an unspecified neurocognitive disorder. [AR at 24.] The ALJ determined at step two, however, that "the evidence lacks significant mental health findings" and plaintiff's unspecified neurocognitive disorder and depressive disorder do not qualify as severe. [Id. at 24-25; but see supra note 4.]

In making this determination, the ALJ primarily relied on the September 4, 2012, opinion of Dean C. Delis, Ph.D. [id. at 449-62], a clinical neuropsychologist, who evaluated plaintiff after plaintiff was "referred by the NFL and the NFL Players' Association for an agreed neuropsychological evaluation of his current cognitive and emotional functioning" in connection with his application for disability benefits from the NFL Player Retirement Plan. [Id. at 447, 449.] Dr. Delis noted plaintiff's history of three concussions while playing football (two in high school and one in college), and administered a battery of psychological tests. [Id. at 450.] Plaintiff reported that he has "really bad memory loss"; has difficulty staying organized and on topic; becomes easily distracted; struggles at times to complete projects; has difficulty with attention and concentration; has slower thinking; experiences word-finding problems; has difficulty reading and spelling individual words; has difficulty remembering what he has read; has increased trouble with math skills, which used to be an area of strength; occasionally becomes lost when driving; and has difficulty multi-tasking. [Id. at 450-51.] Plaintiff also reported that he experiences mood swings; feels some mild depression about once a week; rates his average level of depression as a 3 on a 10-point scale; sleeps poorly; has decreased energy during the day; can be overly self-critical at times; experiences increased irritability and anger; and experiences anxiety (specifically related to fears about his health and his then-pending divorce) on a daily basis at a level between 3 and 5 on a 10-point scale. [Id. at 451.]

Dr. Delis noted that plaintiff arrived about three hours late for the appointment due to "some confusion about the start time and duration of the evaluation," and had driven three hours to attend the examination. [Id. at 458.] He stated that, as a result, although "some of the assessment measures were omitted in order to complete the evaluation within a reasonable time frame . . . a

sufficient number of tests were administered to [plaintiff] in order to conduct the exam, and he showed good focus of attention and mental endurance in taking the tests." [Id.] Dr. Delis found that plaintiff's scores on three of the clinical tests fell "significantly below the cut-off levels indicative of inadequate effort on all three of the stand-alone cognitive validity tests," which "call[ed] into question the validity of his numerous low scores on the regular cognitive tests administered to him." [Id. at 458.] Dr. Delis concluded that "while it is possible that [plaintiff] has at least mild cognitive deficits from the concussions that he sustained while playing football, this conclusion cannot be drawn at this time given his low cognitive validity scores." [Id.] Additionally, on the psychological questionnaires completed by plaintiff, Dr. Delis noted that the *valid* results on those tests showed mild to moderate levels of depressive and anxiety symptoms. [Id.]

On March 31, 2015, on initial review of plaintiff's claim by the Commissioner, reviewing consultant Paul Klein, Psy.D., reviewed the available medical records. Dr. Klein did not mention whether he had reviewed Dr. Delis' September 2012 report. [See generally AR at 134-41.] Based on his review, he determined that "[s]ince memory and learning deficits are noted by a medically acceptable treating source MD, they need additional evaluation." [Id. at 140.] Specifically, Dr. Klein was referring to the January 14, 2015, treatment note from plaintiff's treating physician, Victor Contreras, M.D., who had diagnosed plaintiff with traumatic brain injury, with memory and learning deficits that were frustrating to plaintiff and produced irritability and anxiety in stressful environments. [Id. at 138, 140 (citing id. at 605-08).] Dr. Klein recommended that plaintiff undergo a psychological consultative examination that included a medical history of his traumatic brain injury/concussions, a comprehensive mental status evaluation, and the administration of a battery of specified formal psychometric tests. [Id.]

Accordingly, on June 6, 2015, Lance A. Portnoff, Ph.D., a neuropsychologist, conducted a comprehensive psychological evaluation of plaintiff. [Id. at 633-41.] Plaintiff reported that he was depressed due to chronic pain/disability, with occasional passive suicidal thoughts when the pain gets too much, and experiences "incomplete auditory hallucinations," which Dr. Portnoff noted were "likely due to chronic sleep deprivation." [Id. at 634.] With respect to his mental status evaluation, Dr. Portnoff noted mild psychomotor slowing and discomfort; abnormal involuntary

9

movements in the form of a bimanual tremor; prompt and spontaneous speech, but quiet and flattened; and affect characterized by mild tense depression. [Id. at 636.] He stated that plaintiff seemed to be making his best effort on the psychological testing "so that the[] findings are considered to be a valid representation of his cognitive psychological state." [Id. at 636.] Based on his diagnostic testing, Dr. Portnoff concluded that plaintiff suffered from an unspecified depressive disorder and a mild unspecified neurocognitive disorder.[8] [Id. at 640.] He noted that the testing was "indicative of generalized impairment in verbal and visual reasoning, working memory, processing speed, and in immediate/delayed verbal/visual memory." [Id. at 641.] Based on his evaluation, Dr. Portnoff determined plaintiff had the following abilities and functional limitations: capable of performing simple and repetitive tasks; mild to moderate limitations in the ability to perform complex and detailed tasks; mild limitations in the ability to accept instructions from supervisors; mild limitations in the ability to interact with coworkers and the public due to deficits in language, reasoning, memory, attention, and unspecified depressive disorder; mild limitations in the ability to work on a consistent basis without special or additional instructions; moderate limitations in the ability to complete a normal workday or workweek without interruptions from a psychiatric condition due to combined cognitive and affective symptoms; and mildly impaired ability to deal with the stress encountered in a competitive work environment. [Id.] He noted that plaintiff's prognosis for his unspecified depressive disorder is fair "at this stage," and dependent upon his response to appropriate psychotropics; the prognosis for his neurocognitive disorder "is dependent upon etiology." [Id.]

On July 5, 2015, by which time Dr. Portnoff's assessment was included in the documents reviewed by Dr. Klein,[9] Dr. Klein opined that plaintiff is able to understand and remember simple

---

[8] The Court notes that a number of the subtests on the Wechsler Adult Intelligence Scale-IV appear to have been the same subtests administered by Dr. Delis. The scaled scores noted by Dr. Portnoff on these cognitive tests also appear to be on the low end and were not far removed (in either direction) from the scaled scores obtained by Dr. Delis on those same subtests. [Compare AR at 636-40 with id. at 455-56, 459-62.]

[9] Again, Dr. Klein did not indicate whether he had considered Dr. Delis' report. [AR at 141-

and some detailed tasks; sustain concentration, persistence, and pace for a normal workday/workweek without interruption from psychologically-based symptoms for simple 1-2 step and some detailed tasks; accept instructions from supervisors and interact appropriately with coworkers and the public; and adapt to normal work-related change in most routine work-like settings. [Id. at 145, 146-47.] He concluded, therefore, that plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions; moderately limited in his ability to maintain attention and concentration for extended periods; moderately limited in his ability to complete a normal workday/workweek without interruption from psychologically-based symptoms, but able to sustain concentration, persistence, and pace "for a normal workday/workweek without interruption from psychologically-based symptoms for simple 1-2 step and some detailed tasks"; and moderately limited in his ability to respond appropriately to changes in the work setting, although he is able to adapt to "normal work-related change in most routine work-like settings." [Id. at 150-51.]

On reconsideration of the Commissioner's initial denial of plaintiff's claim, Archimedes Garcia, M.D., did consider the September 2012 report by Dr. Delis. [Id. at 167.] In his October 19, 2015, summary, Dr. Garcia noted that Dr. Delis was unable to assess plaintiff's then-current level of psychological functioning "due to low scores on cognitive validity tests." [Id.] He further noted that a consultative examination was obtained from Dr. Portnoff but then inexplicably stated that the "testing scores were not considered to be completely valid as they were not [consistent with] [plaintiff's] level of education or . . . psychological functioning."[10] [Id.] He stated that he agreed with Dr. Klein's initial mental residual functional capacity assessment "for simple and some detailed tasks." [Id.] Dr. Garcia adopted the moderate limitations assessed by Dr. Portnoff, and

---

[9](...continued)
48.]

[10] These statements may reflect Dr. Garcia's interpretation of plaintiff's test scores [see AR at 168], as Dr. Portnoff never made these alleged statements. Dr. Portnoff stated only that plaintiff "has a history of ADHD, but went on to obtain a college degree." [Id. at 640.] With respect to plaintiff's test scores, Dr. Portnoff actually stated that "the[] findings are considered to be a *valid* representation of his current cognitive status." [Id. at 636 (emphasis added).]

11

specifically found the following: able to understand and remember simple and some detailed tasks; moderately limited in his ability to carry out detailed instructions; moderately limited in his ability to maintain attention and concentration for extended periods; moderately limited in his ability to complete a normal workday/workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but is able to sustain concentration, persistence, or pace for a normal workday/workweek without interruption from psychologically-based symptoms for simple 1-2 step and some detailed tasks; able to accept instructions from supervisors and interact appropriately with coworkers and the public; and able to adapt to "normal work-related change in most routine work-like settings." [Id. at 168, 172-73.] Dr. Garcia also agreed that the record supported a mild cognitive disorder. [Id. at 168.]

The ALJ gave persuasive weight to Dr. Delis' 2012 opinions "because they were consistent with the overall lack of mental health evidence and the finding that [plaintiff] does not have a severe mental disorder." [Id. at 24.] He also determined that Dr. Portnoff's finding "of moderate limitations was not persuasive because it was not supported by the lack of mental findings upon examination and the lack of mental health evidence throughout the record." [Id. at 25.] Thus, "[a]ny conclusion that [plaintiff] had moderate impairments due to a mental disorder was rejected as unwarranted." [Id.] The ALJ found the opinions of reviewing consultants Dr. Klein and Dr. Garcia to be "largely persuasive" and noted that both concluded that plaintiff "could perform a range of light work despite his alleged physical and mental impairments, which was consistent with the conclusions" in the decision. [Id. at 33.] He specifically "rejected" Dr. Klein and Dr. Garcia's finding of a severe mental disorder "because of the lack of mental health evidence and treatment in the record. The mental status examinations by Dr. Delis and Dr. Portnoff did not reveal any significant mental evidence.[11] Therefore, the nonexertional limitations [found by Dr. Klein and Dr.

---

[11] Although Dr. Delis did not explicitly deem his observations of plaintiff's behavior during the evaluation session to be part of a "mental status examination," his observations included slow, deliberate gait; euthymic mood; appropriate affect; fluent speech; minimal difficulty following test instructions; and adequate attention. [AR at 453-54.]

Garcia] due to a mental disorder were rejected." [Id.]

There are a number of problems with the ALJ's reasoning in finding that plaintiff's depressive disorder is not severe. Together, these problems warrant remand on this issue.

First, Dr. Contreras' January 14, 2015, finding that plaintiff suffered traumatic brain injury as evidenced by memory and learning deficits that were frustrating to plaintiff and produced irritability and anxiety in stressful environments, which precipitated the agency's determination that a consultative examination was warranted, was not his only such finding. On March 25, 2015, Dr. Contreras again diagnosed plaintiff with cognitive deficits secondary to traumatic brain injury, and observed that plaintiff was still battling memory deficits and suffering from bouts of accompanying anxiety and irritability. [Id. at 620.] Additionally, in November 2010, in connection with his application for disability benefits from the NFL Player Retirement Plan, plaintiff complained of headaches, worsening memory loss, irritability, and disorientation on occasion.[12] [Id. at 436-40.] Thus, there is record evidence of plaintiff's cognitive and emotional complaints.

Second, contrary to the ALJ's statement that Dr. Portnoff's mental status examination did not reveal any significant mental evidence, Dr. Portnoff actually noted several issues with respect to plaintiff's mental status examination: mild psychomotor slowing and discomfort; bimanual tremor; mildly reduced facial kinetics; quiet and flattened speech; and affect characterized by mild tense depression. [Id. at 636.] In addition to these findings, Dr. Portnoff also found that plaintiff's *valid* test results were indicative "of generalized impairment in verbal and visual reasoning, working memory, processing speed, and in immediate/delayed verbal/visual memory." [Id. at 641.]

Third, the ALJ gave "persuasive weight" to Dr. Delis' 2012 opinions "because they were consistent with the overall lack of mental health evidence and the finding that [plaintiff] does not have a severe mental disorder." [Id. at 24.] However, Dr. Delis did not conclude that plaintiff did not have a severe mental disorder. Instead, he found that the validity of plaintiff's test results

---

[12] The examining physician determined that there was no evidence that plaintiff's subjective symptomatology was related to injuries sustained while playing in the NFL for a single season and during some training camps. [AR at 445.]

(which included "numerous low scores on the cognitive measures administered to him") had been called into question. [Id. at 458.] Dr. Delis also observed that plaintiff's history of concussions "represents a risk factor for permanent cognitive deficits." [Id. at 457.] The only "opinion" Dr. Delis arrived at was that he was unable to make any conclusive findings about plaintiff's cognitive deficits. [Id. at 458 (stating that "while it is possible that [plaintiff] has *at least* mild cognitive deficits from the concussions that he sustained while playing football, this conclusion *cannot be drawn at this time* given his low cognitive validity scores") (emphases added).] Dr. Garcia, who reviewed Dr. Delis' results, also noted that Dr. Delis had been "unable to assess" plaintiff's then-current level of psychological functioning "due to low scores on cognitive validity tests." [Id. at 167.] Of note, outside of the seemingly invalid results of plaintiff's *cognitive* testing, Dr. Delis explicitly determined that plaintiff's scores on tests of *emotional* functioning administered during the evaluation *were valid*. [Id. at 457.] Dr. Delis noted that these tests (the MMPI-2-RF, the Beck Depression Inventory-II and the Beck Anxiety Inventory), reflected *moderate* levels of somatic symptoms, mild levels of stress and worries, and *moderate* levels of depressive and anxiety symptoms. [Id.] Yet, despite giving persuasive weight to Dr. Delis' opinions, there is no evidence that the ALJ considered any limitations resulting from plaintiff's moderate level of depressive and anxiety symptoms in either his RFC assessment or in his hypothetical to the VE.

Fourth, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); see Laborin v. Berryhill, 867 F.3d 1151, 1152-53, 1154 & n.4 (9th Cir. 2017) (noting that in the context of assessing a claimant's testimony, "[b]ecause the claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC, it cannot be discredited because it is inconsistent with that RFC" and to do so, "puts the cart before the horse"). Here, by crediting the opinions of Dr. Klein and Dr. Garcia to the extent that they were *consistent* with the ALJ's conclusion that plaintiff could perform a range of light work, the ALJ appears to have "cherry-picked" from the portions of those opinions that bolstered his pre-determined RFC findings. This observation is further supported by the fact

14

that the ALJ then *rejected all* of Dr. Klein and Dr. Garcia's *inconsistent* conclusions (that had been based on Dr. Portnoff's report) regarding plaintiff's moderate limitations and the severity of his mental impairments, such as his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and complete a normal workday/workweek without interruption from psychologically-based symptoms, except to the extent he was performing "simple 1-2 step and some detailed tasks."

Fifth, both Dr. Klein and Dr. Garcia also found that except in "most *routine* work-like settings," plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting. [AR at 151, 173.] Again, while this finding is consistent with their determination that plaintiff's mental health impairments limited him primarily to unskilled and routine 1-2 step tasks, it is totally *inconsistent* with the ALJ's decision that plaintiff could perform his past relevant skilled work as an office manager, which requires reasoning level 4, and for which the job description contemplates the performance of detailed tasks. As noted by plaintiff [JS at 9], occupations with a reasoning level of 4 require the individual to be able to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. Examples of rational systems are: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation." DOT No. 169.167-034. According to the DOT, the occupation of office manager involves such varied and non-routine duties as coordinating activities of clerical personnel; analyzing and organizing office operations and procedures; evaluating office production, revising procedures, or devising new forms to improve workflow efficiency; establishing uniform procedures and practices; formulating procedures for record keeping; planning office layouts; reviewing clerical and personnel records to ensure completeness, accuracy, and timeliness; preparing activities reports; preparing employee ratings and benefit programs; coordinating activities of various clerical departments or workers within departments; preparing budgets and monthly reports; and hiring, training, and supervising clerical staff. Id. Thus, as noted by plaintiff (who explained at the hearing that among the many tasks he performed as an office manager, he was responsible for

interviewing and purchasing [AR at 128]), this occupation requires a significant amount of directing, controlling, or planning activities of others; performing a variety of duties; dealing with people; and making judgments and decisions. [JS at 9 (citing DOT No. 169.167-034).] These qualities are inconsistent with an individual who is limited to simple 1-2 step tasks, with "some" detailed tasks; moderately limited in his ability to *respond appropriately* to changes in the work setting (albeit able to adapt to "normal work-related change in most *routine* work-like settings"); moderately limited in concentration, persistence, and pace; and moderately limited in the ability to understand, remember, and carry out detailed instructions.

Finally, the ALJ found Dr. Delis' conclusions to be persuasive, which implicitly included Dr. Delis' conclusion (also found by Drs. Portnoff, Klein, and Garcia) that plaintiff "had mild to moderate symptoms of depression and anxiety." [See AR at 24 (citing AR at 458).] The ALJ also specifically found that plaintiff had the medically determinable impairment of a depressive disorder. [Id. at 25.] Yet, in his hypothetical to the VE, there is no indication that the ALJ took any aspect of plaintiff's mental impairments -- depressive disorder or neurocognitive disorder -- whether deemed severe or non-severe, into consideration when he determined plaintiff's RFC and when he presented his hypothetical to the VE. [Id. at 128.] This error is not harmless, as the VE testified that there would be no work for an individual who was off task twenty percent of the time. [Id. at 129.] Even assuming that on remand, and after reconsideration of the record as a whole, the ALJ again finds that plaintiff's alleged mental health impairments do not qualify as severe impairments, the ALJ must nevertheless take plaintiff's non-severe impairments (and any limitations from those impairments supported by the medical record) into account when formulating his RFC and when determining whether plaintiff is capable of performing his past relevant work or other work in the national economy. 20 C.F.R. § 404.1520(e), 404.1545, SSR 96-8p.

Based on the foregoing, the Court determines that the ALJ erred in concluding that the medical evidence does not clearly establish that plaintiff's depressive disorder is a severe impairment at step two. On remand, plaintiff's depressive disorder shall be deemed to be a severe impairment. The ALJ on remand also must reconsider whether plaintiff's unspecified neurocognitive disorder qualifies as a severe impairment under the de minimis standard set forth

in step two.

Remand is warranted on this issue.[13]

# VI.

# **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ on remand shall include plaintiff's depressive disorder as a severe impairment. Second, further consideration of the record is warranted at step two with respect to the medical source opinions of the severity of plaintiff's unspecified cognitive neurocognitive disorder and any limitations from any mental health impairments (whether severe or non-severe). Third, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Fourth, the ALJ, taking all of plaintiff's severe and non-severe impairments and limitations into consideration, shall reassess plaintiff's RFC and determine at step four, with the

---

[13] In light of the fact that the ALJ's step two determination on remand is likely to require the ALJ to reconsider plaintiff's subjective symptom testimony, as well as the medical evidence of record with respect to plaintiff's physical impairments, the Court will not discuss the additional issues raised by plaintiff in the JS.

17

assistance of a VE if necessary, whether plaintiff is capable of performing his past relevant skilled work as an office manager.[14]  If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  August 30, 2019

_/s/ Paul L. Abrams_
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[14]  Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to perform his past relevant work as a football coach or as a football player.  [See AR at 34.]